Our third case is Always Towing & Recovery v. City of Milwaukee & Others, No. 20-3261. And we'll begin, Mr. Baldwin, with you. Good morning. It's Judge Scudder from the courtroom. We've called the case, and if you can hear us okay and you're set to proceed, go right ahead. Thank you, Your Honor. If it pleases the Court, my name is Attorney Timothy Baldwin. I know the Court has read our submissions and our briefs, and I will this morning be going over the civil procedures framework as laid out in the briefing. Did Tomley and Iqbal accept the apple cart of the federal rules of civil procedure? I think not. After all, Rule 8 still stands prominently among all the other civil procedure rules since 1938, even after nearly 10 revisions of other rules. And specifically because Rule 8, the heightened standard, specifically after Rule 8, the heightened standard of Rule 9 and issues of fraud and mistake followed thereafter. Rule 8 must never meet the evidentiary requirements of Rule 56, never require the heightened pleading of Rule 9, must always require the factual notice that Rule 11 will permit, and when the pleading does not, always provide for the relief that Rule 11 liberally grants. This is hard work. When it comes to rule interpretation, this Court must always do what Judge Scalia would have called the work of lawyers. We must harmonize the text. This role cannot be abdicated to the critics and laity who would complain of its complexity. Language matters, and so we must turn to the tools of the canon of interpretation and read the text for contextual instruction and guidance. Mr. Baldwin, I appreciate your overview of the rules. It seems that the document that is most at issue here is not so much this or that rule, which we, of course, deal with on a very regular basis and are familiar with, but rather the allegations in the amended complaint. And so focusing on the allegations in the amended complaint, how have you really alleged anything other than that the city and the others have entered into a long-term contract for particular services? How does that violate the antitrust laws? Cities, municipalities do that all the time for all kinds of things. Healthcare insurance, disposal of waste, you know, on and on and on. How is it an antitrust violation? The issue here before the Court is that this agreement is an exclusive agreement. This agreement has been waived. So is the municipal health insurance agreement. So if the city of Milwaukee, I have no idea who the health insurer is, but suppose this afternoon they decide that all municipal employees' health insurance is going to be provided by Aetna. That would be exclusive. It would be. And the issue of exclusivity in terms of exclusivity agreements weighs upon the issues of the efficiencies associated with that agreement. If it can be determined that that particular agreement has certain benefits, market benefits, certain efficiencies that can be waived, then it does not fall in violation of the antitrust statutes. What is at question here is whether or not there are benefits in this agreement and the efficiencies associated with this agreement affect or impact the market in a way that violates the benefits of the market. So I would re-submit to the Court that there are a number of issues here that have to be waived through litigation and through the discovery process to determine whether or not the actual contract in its terms and conditions violate issues associated with the market and the benefits of the market. Comley, Swierkiewicz, Telalabs, Comley, and Ichabob, which I believe the Court applied correctly in its analysis in Swanson, if not in its ruling as criticized by Judge Posner in its foundation of Rule 8 and its meaning. Although Comley and Ichabob indicate that no set of facts test laid out in Comley has been retired, it does not mean it has been overturned, just acknowledged as misunderstood, which I will later explain. So Swierkiewicz stands for the proposition that Comley's basic principle that Rule 8 only requires a short and plain statement of the claim showing that the pleader is entitled to relief, which means the pleader must give the defense fair notice of what the plaintiff's claim is and the grounds upon which it rests, citing Comley again. Thus, pleading requirements must never be pushed to the heightened scrutiny of Rule 56, plausibility without the benefit of discovery. Telalabs, ironically, ruled in 2007, the same year that Comley was decided, revisits the issue of heightened pleadings in the backdrop of statutory required heightened pleading standards and Rule 9 heightened pleading standards to inform the Court that there is a midway point between Rule 8, giving the defendant fair notice of what the claim is and the grounds requires allegations of fraud and mistake with particularity, the substance of which requires a viewing of what constitutes fraud and mistake. Telalabs introduced the terminology of strong inference to define the factual level of allegations required in a pleading. Again, in the same year, coincidentally, the Court, in asserting the evidentiary grounds for proving conspiracy under Massachi, articulated in Comley that the pleadings must contain enough factual allegations to rise to a right of relief above speculative levels. But on the assumption that all allegations in the complaint are true. In our case before this Court, there is direct evidence, direct evidence, which Judge Souter would go on further to say Comley has never been interpreted literally. And in practice, a complaint must contain either direct evidence or inferential allegations respecting all the matter material elements necessary to sustain recovery under some viable legal theory. The question before the Court is, did the complaint provide direct evidence of a contract or agreement which was governed by the antitrust law? Mr. Balboa, I see that you've wanted to reserve a couple of minutes for rebuttal. We're into that. Would you like to hear from your adversary and respond to what he has to say? Thank you, Your Honor. Okay. Mr. Goldschmidt, we'll turn to you. Good morning. Good morning, Your Honor. May it please the Court. A very wise colleague of mine taught me that sometimes the best argument is to thank the Court and sit down. And as it happens, I'm already sitting down. So while I'm certainly happy to walk the Court through why each count of the complaint was appropriately dismissed with prejudice and answer any questions the Court may have, if the Court has no questions, I'm happy to return the balance of my time to the Court. Okay. Hearing no questions, Mr. Goldschmidt, you have the thanks of the Court. Mr. Baldwin, we'll return to you. Are there any comments you'd like to make in closing? Yes, Your Honor. I would like to direct the Court's attention to the initial question the Court asked about this exclusive contract and why this contract must be evaluated and considered. Go right ahead. It is clear from the case law that exclusivity agreements are a preview of antitrust law. The question becomes whether or not that exclusivity agreement has efficiencies are such that it provides for a benefit that doesn't create an unreasonable restraint on trade. It may be said that certain exclusivity agreements provide benefits, especially in a municipal arena, to benefit the constituents of that city or municipality or even their employees. The question here, though, is are the benefits here outweighed by the inefficiencies of this complaint? We allege in the complaint that there are issues as it relates to environmental concerns. We raise issues as it relates to the licensing regime of keeping rivals out of the marketplace, and we raise issues as to whether or not this particular type of exclusivity agreement is in violation of the antitrust law as it holds all of the market share. That's my comment. Okay, very well. Thanks to both parties. The case is taken under advisement.